# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2135
_____

Flora Amwayi Holmes

*Petitioner*

v.

Merrick B. Garland, United States Attorney General

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: February 17, 2022
Filed: June 17, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Flora Amwayi Holmes, a native and citizen of Kenya, petitions for review of the order of the Board of Immigration Appeals (BIA) denying her motion to remand and dismissing her appeal from an order of removal. Having jurisdiction pursuant to 8 U.S.C. § 1252(b)(2), we deny the petition.

## I.

On December 29, 2009, Holmes entered the United States on an F-1 nonimmigrant student visa. After she failed to comply with the conditions of her nonimmigrant status and falsely claimed to be a United States citizen to gain employment, the Department of Homeland Security (DHS) served Holmes with a notice to appear (NTA). In this NTA, DHS charged her with being removeable pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), which provides for the removal of an alien admitted as a nonimmigrant who has failed to maintain that nonimmigrant status or to comply with the conditions of that status, and § 1227(a)(3)(D)(i), which provides for the removal of an alien who has falsely represented herself to be a United States citizen for any benefits such as employment.

On February 28, 2012, Holmes appeared pro se before an immigration judge (IJ), Judge William Nickerson. Judge Nickerson read the NTA's charges to Holmes and asked if she understood them, and she agreed that she did. Judge Nickerson advised Holmes of her right to be represented by counsel, provided a list of available pro bono attorneys to Holmes, and directed Holmes's attention to that list. Judge Nickerson then asked Holmes if she wanted a continuance to allow her time to obtain a lawyer. Holmes declined, stating that she wanted to represent herself. To confirm, Judge Nickerson said, "Then you're going to waive your right to counsel and represent yourself?" Holmes responded, "Yes, Your Honor."

Later in the proceeding, Judge Nickerson explained that he allows a continuance for any reason as a matter of course and asked Holmes a second time if she would like a continuance, to which Holmes responded that she wanted her case heard that same day. Then, Judge Nickerson asked Holmes if the NTA's charges were true or false. Holmes admitted to the charges and conceded removability. Holmes also told Judge Nickerson that she had been raped while living in Kenya and because of this rape, she feared persecution should she return to Kenya. In turn, Judge Nickerson provided Holmes with an application for asylum. After conducting an off-the-record bond hearing and because he needed documentation about

-2-

Holmes's then-current place of residence prior to making a bond determination, Judge Nickerson continued the matter until March 8, 2012.

Holmes obtained counsel and again appeared before Judge Nickerson on March 8. At this time, through counsel, Holmes requested bond, which Judge Nickerson granted. Pending the posting of this bond, Judge Nickerson continued the matter until June 19, 2012, at which time the matter was reassigned to a second IJ, Judge Kristin Olmanson. At the June 19 hearing, Holmes, through her counsel, stated that she would not be seeking asylum, withholding of removal, or relief under the Convention Against Torture (CAT). Because there was "some confusion as to what had transpired at previous proceedings," Judge Olmanson continued the matter until November 6, 2012. On November 6, Holmes again appeared before Judge Olmanson with counsel. Through counsel, she argued that Judge Nickerson had violated her due process rights by requiring her to affirm or deny the charges contained in the NTA without first informing her of the consequences of admitting to those charges and despite the fact that she was appearing pro se. During this hearing, Holmes also notified Judge Olmanson that she had recently married a United States citizen and had an I-130 visa petition[1] pending. Holmes then requested a continuance so that, if her visa petition were approved, she could apply for an adjustment of status.

Judge Olmanson first found that Judge Nickerson had not violated Holmes's due process rights because he had reviewed, in detail, the hearing's purpose and Holmes's rights and had asked Holmes if she wanted a continuance so that she could obtain an attorney. Judge Olmanson then found that because Holmes had admitted to making a false claim of citizenship on an application for employment, she was statutorily ineligible for adjustment of status under the Immigration and Nationality Act (the Act). See 8 U.S.C. § 1182(a)(6)(C)(ii)(I) ("Any alien who falsely

---

[1]See Thimran v. Holder, 599 F.3d 841, 843 (8th Cir. 2010) ("When a resident alien marries a U.S. citizen, the citizen spouse may file a Form I-130, Petition for Alien Relative, to acquire an 'immediate relative' visa for the alien spouse." (citing 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i)).

represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit . . . is inadmissible."); see also 8 U.S.C. § 1255(i)(2)(A) (requiring alien to be statutorily admissible for permanent residence in order to receive adjustment of status). And because Holmes's request for a continuance was based upon her hope that she could apply for an adjustment of status following the approval of her I-130 visa petition, an adjustment for which Judge Olmanson found that Holmes was statutorily barred, Judge Olmanson denied Holmes's request for a continuance. Judge Olmanson then pretermitted[2] and denied any application for adjustment of status. Finally, Judge Olmanson granted Holmes's request for voluntary departure.

Holmes timely appealed to the BIA. Holmes presented proof to the BIA that her I-130 petition had been approved. Then, on October 28, 2014, while her appeal was still pending, the BIA administratively closed Holmes's proceedings following a joint request from DHS and Holmes. This request followed a change in executive policy allowing for the exercise of prosecutorial discretion. However, on April 30, 2020, following another change in executive policy, DHS filed a motion to recalendar Holmes's proceedings pursuant to Matter of Castro-Tum, 27 I. & N. Dec. 271, 274 (A.G. 2018) ("[T]here is no general authority for administrative closure."), overruled by Matter of Cruz-Valdez, 28 I. & N. Dec. 326 (A.G. 2021). Holmes did not oppose this motion. Holmes then filed a motion to remand; she argued that between 2014 and 2020, her circumstances had changed and, as a result, her due process rights would be violated if the matter were not remanded to allow the IJ to engage in further factfinding and consider her changed circumstances. With this

---

[2]The word "pretermitted" is a term of art "used by the immigration court and the [BIA] whenever an alien is found ineligible to apply for some form of relief." Gonzalez-Balderas v. Holder, 597 F.3d 869, 870 (7th Cir. 2010). In Gonzalez-Balderas, the Seventh Circuit explained that "[t]he common dictionary meanings of 'pretermit' are to leave undone, to neglect, to omit, to overlook intentionally, to let pass without mention or notice, to interrupt or terminate, [or] to suspend indefinitely," before concluding that the term is "unnecessarily vague" and simply means that the petitioner's application for adjustment of status was dismissed. See id.

motion to remand, Holmes filed an I-589 application for asylum, withholding of removal, and CAT relief. The BIA denied Holmes's motion to remand, necessarily foreclosing any opportunity to apply for relief via the I-589 application, and dismissed her appeal, noting that Holmes did not otherwise challenge Judge Olmanson's finding that she was ineligible for an adjustment of status. Holmes now petitions this Court for review of the BIA's denial of her motion to remand and dismissal of her appeal.

II.

Holmes first argues that Judge Nickerson violated her due process rights at the February 28 hearing and, because of this violation, her admission of the charges against her and her subsequent concession of removability should not have been admitted in the November 6 hearing before Judge Olmanson.

We review Holmes's allegation that Judge Nickerson violated her due process rights de novo, as that inquiry is purely legal in nature. See Molina v. Whitaker, 910 F.3d 1056, 1060 (8th Cir. 2018). "The Due Process Clause guarantees that removal proceedings will be 'fundamentally fair,'" Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc) (per curiam) (citation omitted), which means that the IJ "must be neutral and the immigrant must be given the opportunity to fairly present evidence, offer arguments, and develop the record," Molina, 910 F.3d at 1060 (citation omitted). "It is well-settled that, while there is no Sixth Amendment right to counsel, aliens have a statutory right to counsel at their own expense, and are entitled to the Fifth Amendment's guarantee of due process of law in deportation proceedings." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004); 8 U.S.C. § 1229a(b)(4)(A) (providing that an "alien shall have the privilege of being represented"). "The IJ must advise the alien of [her] right to have counsel present, require [her] 'to state then and there whether [s]he' desires representation, . . . and ensure that [s]he has received a list of pro bono legal-services providers." United States v. Yan Naing, 820 F.3d 1006, 1010 (8th Cir. 2016) (quoting 8 C.F.R. § 1240.10(a)(1)-(2)). During a removal proceeding, an IJ has the ability to

-5-

"interrogate, examine, and cross-examine the alien" to determine her removability, 8 U.S.C. § 1229a(b)(1), and enjoys "broad discretion to control the manner of interrogation to get at the truth," Ramirez v. Sessions, 902 F.3d 764, 771 (8th Cir. 2018) (citation omitted). However, an IJ must be particularly careful when dealing with a pro se alien like Holmes. See id. ("Considering the pro se alien's likely lack of legal knowledge, the difficulty of navigating immigration law, and the possibility of expulsion upon failure to do so successfully, we have recognized 'it is critical that the IJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."'" (citation omitted)). To successfully show that Judge Nickerson violated her due process rights, Holmes must demonstrate that he made "a fundamental procedural error" and that prejudice resulted from that error. See Molina, 910 F.3d at 1060.

Holmes's argument fails because she is unable to show that Judge Nickerson made a fundamental procedural error. See id. As the BIA correctly noted, Judge Nickerson reviewed both the hearing's purpose and Holmes's rights in that hearing. Judge Nickerson twice asked Holmes if she wanted to continue the proceedings against her—once, specifically so that Holmes could obtain counsel—which Holmes declined. In fact, Holmes affirmatively stated that she wished to represent herself and waive her right to counsel. Judge Nickerson also provided a list of available pro bono attorneys, in accordance with 8 C.F.R. § 1240.10(a)(1)-(2). Judge Nickerson proceeded to the pleading portion of the hearing, asking Holmes if the NTA's charges were true or false, only after first confirming that Holmes understood the process and her rights within that process. Ultimately, we conclude as a matter of law that Judge Nickerson advised Holmes of her "statutory right to [have] counsel at [her] own expense," Al Khouri, 362 F.3d at 464, and that nothing about Judge Nickerson's handling of the February 28 hearing "calls into doubt the fundamental fairness of the procedures employed," Tamenut, 521 F.3d at 1005. Accordingly, we find that Judge Nickerson did not violate Holmes's due process rights. And because there was no due process violation, it was not an error for Holmes's admission of the charges against her and concession of removability to be admitted in the November 6 hearing before Judge Olmanson.

Holmes next argues that the BIA violated her due process rights when it denied her motion to remand. We disagree. Although we ordinarily review the BIA's denial of a motion to remand under a "highly deferential abuse-of-discretion standard," see Alva-Arellano v. Lynch, 811 F.3d 1064, 1066 (8th Cir. 2016), we review constitutional questions de novo, see Molina, 910 F.3d at 1060. Therefore, we proceed under a de novo standard of review because Holmes's argument is constitutional in nature. Compare Rodriguez v. Barr, 952 F.3d 984, 991 (8th Cir. 2020) (considering, for abuse of discretion, argument that BIA erred in denying petitioner's motion to reopen), with Salman v. Holder, 687 F.3d 991, 995 (8th Cir. 2012) (considering, de novo, argument that BIA violated petitioner's right to due process in denying motion to reopen and remand). As with Holmes's first due process argument, here, Holmes must show that there was "a fundamental procedural error" and resulting prejudice. See Molina, 910 F.3d at 1060.

Holmes explains that remand is necessary because she wanted to present previously unavailable evidence, including: the fact that, since 2014, she has been married to a United States citizen and has had a child with him, which she argues demonstrates that her deportation would create hardship for her family unit; evidence of her "good moral character," though she did not specify what evidence she would offer; a letter from a psychologist attesting to Holmes's post-traumatic stress disorder, which developed as a result of being raped while living in Kenya; and Holmes's own affidavit, in which she described her rape and explained that she had not earlier applied for asylum, withholding of removal, and CAT relief because she was unable to talk about her rape due to the trauma she experienced. Holmes further argues that remand is necessary so that she can seek relief from removal via the I-589 application that she filed alongside her motion to remand. The BIA violated Holmes's due process rights by denying her motion to remand, her argument goes, because that denial simultaneously denied her an opportunity to apply for and benefit from a grant of relief from removal.

Although Holmes's motion is, in name, a motion to remand, we find that it is substantively a motion to reopen the removal proceedings against her. Several

observations lead us to this conclusion. First, Holmes relies on Clifton v. Holder, 598 F.3d 486 (8th Cir. 2010), in her motion to remand. However, a close reading of Clifton reveals that it concerns scenarios in which an alien has requested that her case be reopened *and* remanded, not simply remanded, as Holmes suggests. See id. at 491 (explaining that case may be *reopened* where alien presents new material evidence that "was not available and could not have been discovered or presented at the former hearing" (quoting 8 C.F.R. § 1003.23(b)(3))). Second, in her motion to remand, Holmes wrote, "A motion to remand must be accompanied by any new evidence or application. Along with the motion to remand, [Holmes] is filing an I-589 application for asylum and withholding of removal with [United States Citizenship and Immigration Services]." And, in Holmes's I-589 application that accompanied her motion to remand, she wrote, "A motion to remand must be accompanied by any new application for relief; therefore, [Holmes] files her motion and application for asylum at the same time." This language almost mirrors the language appearing in 8 C.F.R. § 1003.2(c)(1), the regulation governing motions to reopen before the BIA, which parallels the regulation governing motions to reopen before the IJ, 8 C.F.R. § 1003.23(b)(3), a regulation that we relied on in Clifton, 598 F.3d at 491. Section 1003.2(c)(1) provides, in relevant part:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. *A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing*; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

(emphasis added). Holmes incorporated the language italicized above into her motion to remand and her I-589 application.

Holmes's use of § 1003.2(c)(1)'s language in her motion to remand and her I-589 application suggests that Holmes was actually asking the BIA to reopen the proceedings against her so that the IJ could consider her accompanying application for relief, in accordance with § 1003.2(c)(1). Notably, we incorporated some of § 1003.2(c)(1)'s language in Alva-Arellano, a case in which the petitioner challenged the BIA's denial of his motion to *reopen* and remand. We explained that "[t]he BIA should reopen proceedings 'only if the new evidence presented "could not by the exercise of due diligence have been discovered earlier."'" Id. at 1067 (citation omitted). This is also the language that the BIA used when evaluating Holmes's motion and deciding that remand was inappropriate. It explained: "[W]e are not persuaded that the letter from [Holmes's] psychologist or her affidavit constitute material, previously unavailable evidence." This suggests that the BIA treated Holmes's motion as one to reopen. See § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.").

Having concluded that Holmes's motion to remand in fact sought to reopen the removal proceedings, we note that "where a motion to remand is really . . . a motion to reopen . . . , it must comply with the substantive requirements for such motions." Sharif v. Barr, 965 F.3d 612, 623 (8th Cir. 2020) (alterations in original) (citation omitted)). Holmes does not argue that she has complied with such requirements, and the BIA found that she had not. Accordingly, we conclude that the BIA made no fundamental procedural error in denying her motion. See Salman v. Holder, 687 F.3d 991, 995-96 (8th Cir. 2012) (finding no due process violation in denying motion to reopen and remand where petitioner failed to show that a fundamental procedural error occurred).

## III.

For the foregoing reasons, the petition is denied.

_____